IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

| | |
|---|---|
| **MAXIMINO NOLAZCO, Individually and on Behalf of the Wrongful Death Beneficiaries of OLIVIA HERNANDEZ, Deceased; and HECTOR ONTIVEROS, JR.** | **PLAINTIFFS** |
| vs. | CAUSE NO.: 1:24-CV-012-GHD-DAS |
| **CANNON USA, INC.; CANNON S.P.A. d/b/a CANNON GROUP; and CANNON AFROS.; and JOHN DOES 1-25** | **DEFENDANTS** |

## COMPLAINT

**COME NOW**, the Plaintiffs, Maximino Nolazco, on behalf of the Wrongful Death Beneficiaries of Olivia Hernandez, deceased, and Hector Ontiveros Jr., by and through their attorneys, and file their Complaint against the above-named Defendants. In support thereof, Plaintiffs would show:

### PARTIES

1. Plaintiff, Maximino Nolazco, is an adult resident of Tishomingo County, Mississippi, and he brings this action individually and on behalf of the Wrongful Death Beneficiaries of Olivia Hernandez, deceased.

2. Plaintiff, Hector Ontiveros Jr., is an adult resident of Tishomingo County, Mississippi.

3. Defendant, Cannon USA, Inc., is a New York corporation with its principal place of business at 1255 Freedom Road Granberry Township, PA 16088, and it is considered a citizen of both the State of New York and the State of Philadelphia for diversity jurisdiction under 28 U.S.C. § 1332.

4. Defendant, Cannon S.p.A d/b/a Cannon Group is an Italian business entity whose address is Via Resistenza 12 20068 Peschiera Borromeo (Mi) Italy and who may be served via the Hague Convention. Cannon S.p.A is the parent entity for the Cannon Defendants.

5. Defendant, Cannon AFROS, is an Italian business entity whose address is Via Enrico Fermi, 355 21042 Caronno Pertusella VA Italy and who may be served via the Hague Convention. Upon information and belief, Cannon AFROS designed the Cannon equipment made the basis of this suit.

6. John Does 1 through 25 are the people or entities, whether singular or plural, who or which caused or contributed to Olivia Hernandez's death and Hector Ontiveros Jr.'s injuries. Plaintiffs claim the identities of the John Doe Defendants are unknown or, if their names are known to Plaintiffs, their identities as proper parties are not known to Plaintiffs and their true names will be substituted by amendment under the Federal Rules of Civil Procedure when determined.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

8. Venue is proper in this Court under 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

9. Plaintiffs demand a jury trial under Rule 38 of the Federal Rules of Civil Procedure.

## FACTS

10. Defendants, Cannon USA Inc., Cannon S.p.A. d/b/a Cannon Group, and Cannon AFROS, design, manufacture, market, import, distribute, sell, and install a wide-range of manufacturing equipment, including but not limited to the equipment in this case – A-40 Cannon

injection molding pillow carousel bearing serial number 12020 (referred to hereafter as the "Cannon equipment").

11. Defendants aggressively warrant, market, advertise, and sell the Cannon equipment and their services, which includes installation, training, servicing, updating/revamping, and equipment checkups both within and after warranty.

12. Defendants tout the safety and efficiency of the Cannon equipment asserting they are the world leader. Despite Defendants' claims of safety and efficiency, they designed, manufactured, marketed, imported, distributed, installed, and/or sold, through its United States subsidiary Cannon USA, the Cannon equipment, which suffers from serious and dangerous defects.

13. These defects cause significant risk of bodily harm, death, and injury to users and operators of the Cannon equipment. Specifically, these defects manifest themselves when pillows become stuck in the molds, and when reversing the Cannon equipment to remove the pillows. Despite Defendants' statements of safety and efficiency, users and operators must remove the pillows from the mold, placing themselves in a zone of danger.

14. The decedent, Olivia Hernadez, was an employee of Comfort Revolution Manufacturing of MS LLC and used the Cannon equipment for its intended purpose of manufacturing pillows for her employer and did so in a way that was reasonable, foreseeable, and/or as directed by the by Defendants.

15. The Cannon equipment was defectively and negligently designed and manufactured by the Defendants because it failed to properly function when ejecting pillows from the molds and did not have proper guards, safety stops, and reverse mechanisms to prevent users

and operators from entering the moving carousel to remove pillows from the mold and becoming pinned between the molds.

16. Because the Cannon equipment did not properly eject pillows, the decedent entered the space between the molds to remove the stuck pillows and was pinned. During the ordinary, foreseeable operation of the Cannon equipment, the decedent's head was pinned between the molds, and the decedent's skull was crushed by the gravity fed Cannon equipment.

17. The defective Cannon equipment placed decedent and other employees in danger. Failing to properly design proper guarding, emergency stops, and functional reverses caused decedent's head to be pinned between two molds crushing her and causing her death and the wrongful death claimants' damages.

18. This incident was seen by other employees and family members, including but not limited to Hector Ontiveros Jr., decedent's nephew, who could not stop the Cannon equipment in time to prevent the decedent from being crushed.

19. Defendants knew or should have known of the defective Cannon equipment but placed profits ahead of safety by continuing to manufacture, produce, sell, and service the Cannon equipment for entities like Comfort Revolution Manufacturing of MS LLC and other foreseeable users and operators, like the decedent, all while failing to warn entities, users, and operators of the serious risks posed by the defective Cannon equipment.

19. Defendants designed the Cannon equipment knowing that employees, who were the users and operators, would be an integral part of the manufacturing process because the Cannon equipment was not 100 percent automated. The Cannon equipment was unreasonably dangerous in that the de-mold area of the carousel was not adequately guarded to prevent users and operators from reaching into or entering the danger zone. Defendants knew or should have known that users

and operators had to remove pillows from the molds when they occasionally did not release them on their own and became stuck.

20. Defendants further did not warn of the dangers of entering the space between the molds and did not design a fail-safe stop or reverse switch within reach of users and operators working near the molds or for those that entered the area between the molds to remove stuck pillows.

21. Defendants and their subsidiaries were aware of these dangers when performing maintenance on the Cannon equipment. Given Defendants' installation, servicing and tech support, the danger from the defective Cannon equipment was not only foreseeable but within a reasonable probability known by Defendants.

22. Defendants knew or should have known the Cannon equipment had design defects that posed serious safety risks to users and operators. Still, Defendants continue to ignore and/or conceal their knowledge of the defects from users, operators, and purchasers but continue to generate a substantial profit from the sales and servicing of the Cannon equipment, showing a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of decedent and others like her.

23. As a direct and proximate result of Defendants' concealment of defects in the Cannon equipment, their failure to warn users and operators of those defects, their negligent misrepresentations, and their negligent design of the Cannon equipment, the decedent used the unreasonably dangerous Cannon equipment, which resulted in a painful death in addition to the other damages suffered by Plaintiffs.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE

24. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

25. At all material times, Defendants had a duty to exercise reasonable care in all parts of the design, manufacture, programming, testing, labeling, marketing, sale and provision of adequate warnings regarding the use of the Cannon equipment to ensure its safety and to ensure that reasonably anticipated users and operators, including Plaintiffs' decedent, obtained accurate information and instructions for the safe use and operation of the Cannon equipment.

26. Defendants did not exercise ordinary care in the design, manufacture, programming, sale, testing, quality assurance, quality control and distribution of the Cannon equipment because Defendants knew or should have known the Cannon equipment created an unreasonably high risk of injury.

27. Defendants were negligent in the design, manufacture, advertising, warning, marketing, installation, servicing, and sale of the Cannon equipment in that it:

    a. Failed to use due care in designing and manufacturing the Cannon equipment to avoid the aforementioned risks to users and operators;

    b. Placed an unsafe product into the stream of commerce;

    c. Failing to accompany the Cannon equipment with proper warnings regarding the risk of injury to users and operators, such as Plaintiffs' decedent, who entered the Cannon equipment to remove stuck pillows; and

    d. Were otherwise careless or negligent.

28. Upon information and belief, Defendants continued to market the Cannon equipment, even though Defendants knew or should have known that the Cannon equipment caused an unreasonable and dangerous risk of injury to users that many users and operators could

not remedy by any means, and when there were alternative methods to manufacture the Cannon equipment to prevent the harm caused.

29. Defendants knew or should have known users and operators, such as Plaintiffs' decedent, would suffer a foreseeable injury because of Defendants' failure to exercise ordinary care as described herein.

30. At all material times, Defendants knew of the defective nature of the Cannon equipment, and continued to design, manufacture, program, market, sell, and service the Cannon equipment to maximize sales and profits at the expense of public health and safety, and as such Defendants' conduct shows a wanton and reckless disregard for human life; and further, upon information and belief, Defendants exhibited such an entire want of care as to show that their actions resulted from fraud, actual malice and a conscious and deliberate disregard of foreseeable harm to the Plaintiffs' decedent herein, thus entitling the Plaintiffs to punitive damages.

## COUNT II – STRICT PRODUCTS LIABILITY

31. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

32. At the time of decedent's death, the defective Cannon equipment was unreasonably dangerous for use by foreseeable users, operators, and consumers, including Plaintiffs' decedent.

33. The Cannon equipment was in the same or substantially similar condition as when it was installed and serviced by Defendants.

34. Plaintiffs' decedent did not misuse or materially alter the Cannon equipment.

35. The Cannon equipment did not perform as safely as an ordinary user/operator/ consumer would have expected it to perform when used in a reasonably foreseeable way.

36. Further, a reasonable person would conclude that the possibility and seriousness of harm and death outweighs the burden or cost of making the Cannon equipment safe. Specifically:

   a. The Cannon equipment that was designed, manufactured, sold, serviced, and supplied by Defendants was defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for users/operators/consumers;

   b. The seriousness of the potential injuries, including death, resulting from the Cannon equipment, drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants did not properly design, manufacture, distribute, install, supply, service, and sell the Cannon equipment, despite having extensive knowledge that the injuries and death could and did occur;

   d. Defendants did not warn and place adequate warnings and instructions on the Cannon equipment;

   e. Defendants did not adequately test the Cannon equipment; and

   f. Defendants did not market an economically feasible alternative design, despite the economical, safer alternatives, which could have prevented the decedent's death and the Plaintiffs injuries and damages.

37. Defendants' actions and omissions were the direct and proximate cause of the decedent's death and Plaintiffs' injuries and damages.

### COUNT III – FAILURE TO WARN

38. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

39. The Cannon equipment manufactured and/or supplied by Defendants was unaccompanied by proper warnings about the risk of injury to people who may enter the Cannon equipment work area when the equipment was operational or stuck because of pillows that jammed the Cannon equipment. Defendants violated Miss. Code Ann. § 11-1-63(c).

40. After Defendants knew or should have known of the risk of injury from the use and operation of the Cannon equipment, they did not provide adequate warnings to users and operators of the Cannon equipment, and continued to aggressively promote the Cannon equipment, and as a direct result thereof, the Cannon equipment designed, manufactured, programmed, serviced, and/or supplied by Defendants was defective due to inadequate post-marketing warning and/or instructions.

41. Upon information and belief, as a producing cause of legal result of the defective condition of the Cannon equipment as designed, manufactured, programmed, serviced, and/or supplied by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants, Plaintiffs sustained the damages and injuries set forth herein.

42. At all material times, Defendants knew of the defective nature of the Cannon equipment and continued to design, manufacture, program, market, sell, and service the Cannon equipment to maximize sales and profits at the expense of public health and safety, and Defendants' conduct exhibits such an entire want of care as to establish its actions were willful, reckless, a result of fraud, actual malice, and the conscious and deliberate disregard of foreseeable harm to Plaintiffs' decedent thus entitling Plaintiffs to punitive damages.

**COUNT IV – DESIGN AND/OR MANUFACTURING DEFECT**

43. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

44. At all material times, the Cannon equipment manufactured by Defendants was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the Cannon equipment deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, and the defective condition rendered the Cannon equipment unreasonably dangerous to the Plaintiffs' decedent, and the defective and unreasonably dangerous condition of the Cannon equipment proximately caused the damages for which recovery is sought in this action. Defendants violated Miss. Code Ann. § 11-1-63(a).

45. Alternatively, the Cannon equipment designed by Defendants was defective because Defendants knew, given reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the Plaintiffs' damage, and the Cannon equipment did not function as expected and there existed a feasible alternative design that would have to a reasonable probability prevented the harm. Defendants violated Miss. Code Ann. § 11-1-63(f).

46. Upon information and belief, the Cannon equipment was, when it left Defendants' control, a defective product unreasonably dangerous for use, and caused injury to the Plaintiffs as alleged herein.

47. The defective and unreasonably dangerous condition of the Cannon equipment was the proximate cause of the injuries sustained by the Plaintiffs resulting in the damages and injuries set forth herein.

48. At all material times, Defendants knew of the defective nature of the Cannon equipment and recklessly continued to design, manufacture, market and sell the Cannon equipment to maximize sales and profits at the expense of public health and safety, and they exhibited such an entire want of care as to establish its actions were willful, wanton, reckless, fraudulent, malicious, and exhibited a conscious and deliberate disregard of foreseeable harm to Plaintiffs' decedent, thus entitling Plaintiffs to punitive damages.

## COUNT V – BREACH OF EXPRESS WARRANTY OF MERCHANTABILITY

49. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

50. Defendants expressly warranted that the Cannon equipment was safe for use and Plaintiffs' decedent justifiably relied on said express warranties.

51. The Cannon equipment was defective and unreasonably dangerous to the Plaintiffs' decedent and other similarly situated users and operators and said defective and unreasonably dangerous conditions caused Plaintiffs' damages. Accordingly, Defendants violated Miss. Code Ann. § 11-1-63(a).

## COUNT VI – BREACH OF IMPLIED WARRANTIES

52. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

53. Mississippi law recognizes an action for breach of implied warranties of safety, merchantability, and fitness. Defendants have violated these implied warranties:

    a. Defendants impliedly warranted to prospective purchasers, users, and operators, including Plaintiffs' decedent, that the Cannon equipment was safe, merchantable, and fit for the ordinary purposes for which such is used.

      b.    Plaintiffs' decedent reasonably relied on the skill and judgment of Defendants as to whether the Cannon equipment was of merchantable quality and safe and fit for its intended use.

      c.    Upon information and belief, and contrary to such implied warranties, the Cannon equipment was not of merchantable quality or safe or fit for its intended use because the Cannon equipment was and is unreasonably dangerous and unfit for the ordinary purpose for which it was used as previously described.

54.    As a direct and proximate result of the breach of implied warranties by Defendants, Plaintiffs suffered and will continue to suffer injury, harm and economic loss as alleged herein.

## COUNT VII – NEGLIGENT MISREPRESENTATION

55.    Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

56.    Defendants falsely represented to users, operators, and consumers that the Cannon equipment was safe when used as instructed. These representations, that the Cannon equipment was safe for its intended use when used as instructed and labeled, were false as the Cannon equipment was dangerous to the health of Plaintiffs' decedent when used as intended.

57.    Defendants did not exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of the Cannon equipment, and otherwise did not exercise reasonable care in communicating the information to Plaintiffs' decedent and those similarly situated.

58.    In reasonable reliance on Defendants' misrepresentations, Plaintiffs' decedent was induced to, and did, use the Cannon equipment.

59. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs sustained the damages and injuries set forth herein.

### COUNT VIII – BYSTANDER LIABILITY

60. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

61. Plaintiff Hector Ontiveros Jr. was at the scene of the incident and witnessed his aunt, Olivia Hernandez, having her skull crushed by the Cannon equipment.

62. The shock from seeing Plaintiffs' decedent being crushed to death made a direct emotional impact upon Mr. Ontiveros causing him to sustain nightmares, post-traumatic stress, and mental anguish.

63. Because Mr. Ontiveros saw the incident, sustained a direct emotional impact from observing the incident, and his aunt was the victim, Defendants are liable to Mr. Ontiveros for the emotional distress and mental anguish he has sustained.

### COUNT IX - ACTS OF NEGLIGENCE OF DEFENDANTS JOHN DOES 1-25

64. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

65. Plaintiffs allege that the wrongful conduct of the John Doe Defendants combined and concurred with the wrongful conduct of the named Defendants and as a proximate consequence thereof, Plaintiffs were severely injured. All foregoing Counts and causes of action stated or in any later amendment are adopted and alleged against any fictitious party described in the caption and style of this or any Amended Complaint.

### **DAMAGES**

66. Plaintiffs incorporate by reference the preceding paragraphs and allegations as though set forth herein.

67. As a proximate consequence, or proximate contributing consequence, of the above-described acts of the Defendants, Olivia Hernandez was killed and her estate and wrongful death beneficiaries suffered and sustained injuries, damages, and/or losses and damages, including, but not limited to:

   a. Olivia Hernandez's conscious pain and suffering before her death;

   b. Olivia Hernandez's funeral expenses;

   c. loss of Olivia Hernandez's society and companionship;

   d. loss of Olivia Hernandez's wages and household production;

   e. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial; and

   f. other injuries, losses and damages which may be shown at trial.

68. As a proximate consequence, or proximate contributing consequence, of the above-described acts of the Defendants, Mr. Ontiveros witnessed Olivia Hernandez's death, causing him to suffer and sustain injuries, damages, and/or losses and damages, including, but not limited to:

   a. Mr. Ontiveros' pain and suffering, emotional distress and mental anguish;

   b. Mr. Ontiveros' past, present, and future medical expenses;

   c. Mr. Ontiveros' lost wages; and

   d. other injuries, losses and damages which may be shown at trial.

69. The acts or omissions of Defendants were grossly negligent entitling Plaintiffs to punitive damages under Mississippi Code Section 11-1-65 (1972, as amended) and/or under the common law, in an amount sufficient to punish Defendants and to deter similar future conduct.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiffs demand judgment against the Defendants in an amount to be determined by a jury reasonably calculated to compensate the Plaintiffs for their injuries, damages, and losses, and all costs, including but not limited to pre-judgment interest of 8% compounded daily. Plaintiffs pray for any other relief as this Court may consider equitable and just, or that may be available, including but not limited to all reliefs prayed for in this Complaint.

                                                Respectfully Submitted,

                                                **Maximino Nolazco, et al.**

By:   */s/ Casey L. Lott*
       CASEY L. LOTT, MBN 101766
       THOMAS O. COOLEY, MBN 103991
       Attorneys for Plaintiffs

**LANGSTON & LOTT, PLLC**
100 South Main Street
Post Office Box 382
Booneville, Mississippi 38829
Telephone: (662) 728-9733
Facsimile: (662) 728-1992
Email: clott@langstonlott.com
         tcooley@langstonlott.com